# Stewart *v.* Warner.

### In the Court below,

JONATHAN WARNER and GIDEON LEET, *Plaintiffs;*
JAMES STEWART, *Defendant.*

The sentence of a foreign court of admiralty is conclusive, and cannot be impeached in this country, until regularly set aside, in the country where passed.

THIS was an action of trover, for the conversion of the brigantine *Matilda*, in common form.

On trial to the jury, on the general issue, it was admitted, that the property of the vessel was formerly in the plaintiffs, and that she was sent out by them on a voyage to the West-Indies, in the month of March, 1799. The defence was, a condemnation of the vessel by the Tribunal of Commerce and Prizes sitting at Basse Terre, in the Island of Guadaloupe, under the jurisdiction of the Republic of France. To invalidate this condemnation, the plaintiffs offered the deposition of *Ira Canfield*, the master, to prove, that it was obtained by the fraudulent conduct of the defendant. The defendant, after having read the deposition to the Court, for the purpose of taking an exception thereto, did object, that it was wholly irrelevant, and inadmissible. The Court overruled the objection, and admitted the evidence, which, as appears from a bill of exceptions filed by the defendant, was to the following effect : That the vessel and cargo having been consigned to the deponent, by the plaintiffs, he disposed of part of the cargo in the Island of Anguilla, and on the 26th of May, 1799, sailed thence for St. Bartholomews ; that on his way, he secreted one thousand Spanish milled dollars under the star-board bath, within the ceiling, being the avails of the property, which he had sold at Anguilla ; that soon afterwards he arrived at the entrance of the harbour of Gustava, in St. Bartholomews, where the vessel was captured, by two French privateers, and sent to the Island of St. Martins ; that on the day following, the deponent, having been landed, and set at liberty, met the defendant, in the street, at St. Bartholomews, who appeared willing to befriend him, and offered to assist him, if he wished, and invited him to his lodgings ; that the deponent informed the defendant of his having secreted the money in the vessel ; that the defendant then enquired very particularly as to the condition of the vessel ; that three days afterwards

the defendant told the deponent, that he had purchased half of the vessel, and offered the same to the deponent, if he would take her in St. Martins, where she was, unseen, and pay the defendant five *per cent.* commissions, and give him an answer in half an hour; that on the deponent's objecting to these terms, for want of time, and means of payment, as well as because the vessel was not then condemned, the defendant proposed to him to draw bills on his owners; that the information respecting the secreted money was given to the defendant *in confidence,* and that he soon betrayed that confidence, by disclosing the secret, and materially changed his conduct towards the deponent.

A verdict was found, and judgment rendered, for the plaintiffs.

The admission of the deposition in evidence was assigned as cause of error.

*Ingersoll* and *Hosmer,* for the plaintiff in error.

The question, which arises upon this record, is, whether the Court might, on any principle of general law, permit testimony to be given, to shew, that *Stewart,* the defendant below, obtained " said condemnation by his fraudulent conduct ?" This question is extremely interesting, when it is considered, that it relates, not to the right of evading by testimony a decision of our own State, but to the decrees of a court of admiralty; decrees formed on the law of nations, and to be judged by a law equally general. It involves the question, how far have *nations* considered themselves *bound by decrees of admiralty.*

What have been the practices and adjudications of nations, with respect to the conclusiveness of a decree?

1803.

STEWART
*v.*
WARNER.

The determinations of all courts, in every country, consider them as *conclusive*, with the exception of their *proceeding on partial ordinances*, and will not enquire into their merits. (*a*)

In *Hughes* v. *Cornelius*, (*b*) trover was brought, as in this case, and the court unanimously considered the *decree* as *conclusive*, and would not permit the special verdict to be argued.

In *Bernardi* v. *Motteux*, (*c*) the court admitted evidence to prove the property to have been neutral, on the ground, that the *sentence was ambiguous*, and it could not be known from it, *on what ground the condemnation proceeded*. But, in the most unequivocal manner, they declare, that the sentence is *conclusive*, as to every thing within it.

The case of *Barzillai* v. *Lewis*, (*d*) and that of *De Souza* v. *Ewer*, (*e*) proceeded upon the principle, that on the question of neutrality, " the condemnation, as to " the ground it professes to go on, is *conclusive*."

In *Geyer* v. *Aguilar*, (*f*) wherein a vessel, for want of a *role d' equipage*, was condemned as enemy's property, the court adjudged this to be conclusive evidence against the warranty of neutrality. This is a very strong case to shew, that though they as men may feel a decision to be unjust, yet as judges they will respect it.

(*a*) *Park* 353.   6 *Vin.* 535.   1 *Com.* 392.   2 *Woodeson* 456.   3 *Bla. Com.* 108.   *Peake's L. Ev.* 46 *to* 54.   1 *Salk.* 32.   2 *Ld. Raym.* 891. *Collect. Jurid.* 101, 103.

(*b*) 2 *Show.* [232] 242.        (*c*) *Doug.* [554] 575.
(*d*) *Park* 358.               (*e*) *Park* 360.
(*f*) 7 *Term Rep.* 681.

U

So, in *Christie* v. *Secretan,* (*g*) the same doctrine as to the conclusiveness of a decree is insisted on by the court.

In *Calvert* v. *Bovill,* (*h*) the doctrine of the conclusiveness of a sentence is strongly insisted on. " If we " can collect from the sentence itself on what ground the " foreign court decided, it is *conclusive,* in any action " brought in this country."

In *Park* 365, the principles of all the cases mentioned are fairly stated; and it is declared, that *whenever the ground of the decision is manifest, it is conclusive ;* but that if a sentence be founded on partial ordinances, the court will not deprive " the insured of his indemnity."

By the English law, the decree of the Exchequer Court is conclusive, when given *in rem.*

On the whole, first, as to admiralty proceedings, they are conclusive always, unless reversed by appeal ; secondly, all other judgments are conclusive as to the parties ; but, thirdly, fraud may be replied to them by *strangers.* (*i*)

But, if it is ever proper that fraud should be given in evidence against a decree of admiralty, let us enquire of what description the testimony must be.

It must shew something, that had *weight in the procurement of the adjudication.*

(*g*) 8 *Term Rep.* 192.
(*h*) 7 *Term Rep.* 527.
(*i*) 1 *Salk.* 290, *Blackham's case. Peake's L. Ev.* 51, 54. *Amb.* 756, *Prudham* v. *Phillips.*.

These propositions will, then, be insisted on :

1. That every thing, that does not go to prove, or disprove, *the point of contest* before the court, is absolutely *irrelevant*, and ought not to be heard. (*k*)

2. The testimony of *Canfield* was *wholly irrelevant.* It was neither evidence *direct*, nor *leading* to any thing *material*. It proved, that *Stewart* had greatly deceived the confidence of *Canfield;* that he had bought the vessel before the condemnation ; that he had, most probably, found the money ; and was desirous, nay, he had made it his *interest*, that the vessel should be condemned. But what inference can be deduced from this, to shew, that the vessel was not *fairly* condemned? Is not all this consistent with a *fair condemnation ?* If the *judge* had *jurisdiction of prizes*, and if his proceedings were regular, they cannot be questioned. But, if you do question them, it must be on the ground, that, by some *practice*, he has been *misled.* Nothing of that kind appears. The vessel was captured ; a legal condemnation was had ; and the plaintiffs below offer to impeach it, on the ground, that *fraud was used to procure it.* A fraud may have been practised upon *Canfield;* but the deposition shews *none* upon *the court, in obtaining the decree.*

*Edwards*, (of New-Haven) and *Daggett*, for the defendants in error, contended, that though the sentence was conclusive against those who were parties to it ; yet that, in this case, it was competent to prove, that *Stewart*, who justified under it, procured it to be obtained *by fraud.* (*l*)

(*k*) 3 *Bla. Com.* 367. 2 *Bla. Rep.* 1165, *Sayre* v. *Rochford.*
(*l*) 3 *Co.* 77, *Fermor's case.* 1 *Burr.* 395, *Bright* v. *Eynon.*

The judgment was reversed, CHESTER, AUSTIN, and ALLEN, *Asts.* dissenting.

BY THE COURT. The question, in this case, is, whether a sentence of condemnation of a foreign court, of competent jurisdiction, can be avoided on account of fraud practised in obtaining it, when thus called in question collaterally, in this country ; and the Court are of opinion, that such sentence cannot thus be called in question, but must remain in full force, until avoided in some regular mode, in the country where it passed.